Good morning, Your Honor. My name is Dan Dunn, representing the appellants. In this appeal, we address several fundamental issues relating to arbitration agreements. The first question presented here is who decides whether an agreement is substantively unconscionable where the parties have agreed that issues of enforceability must be arbitrated. In this case, the district court found that an appellant submit that having satisfied itself as to the making of an agreement to arbitrate. The Federal Arbitration Act and the Supreme Court precedent required the district court to take the next step and to send the issue of the enforceability of that agreement to arbitration as provided for in the agreement itself. The second question presented here is whether the district court applied an erroneous legal standard in making its decisions about substantive unconscionability. Appellant submits that a district court may not invalidate facially neutral provisions because they are effectively one-sided or overly harsh under Washington law, but that is precisely what the district court did here. In this case, the district court committed clear error by failing to apply the appropriate standard of substantive unconscionability under Washington law. In truth, the benefits and burdens of the arbitration agreement, that is before the court, are equally available to both parties. They preserve access to the courts for ancillary remedies for both parties. The confidentiality provisions provide benefits to both parties. And the costs certainly do not shock the conscience. So none of these would render the agreement substantively unconscionable if the appropriate standard under Washington law were applied. Let me cut off your introduction and take you back to the first question for a while. Sure. Who decides? And there clearly is language in Supreme Court opinions that appear to indicate that the parties, I think the language is something like clearly and unmistakably, reach an agreement to have that decision made by an arbitrator rather than by the court. Do you have a case to offer up to us that shows where somebody adopts that or says, yeah, this is in that clearly and unmistakably category so that the court should give way even on the first threshold question? There is no case that either side has presented where the matter has first gone to arbitration under the clearly and unmistakable language that is referred to in first options. In first options, however, that matter was first decided by the arbitrator. And after decision by the arbitrator, it was reviewed in the district court and eventually by the Supreme Court. So what that tells us is that these threshold kinds of enforceability or validity issues can be resolved by courts after a review or, I'm sorry, after a determination by an arbitrator. I think that's the teaching of first options. And I have to admit, I have an array of cases in my head and I'm just, I've gotten lost. What was the challenge in first options? What was the alleged objection or basis for objecting to the arbitration clause? In first options, there were three parties against whom an arbitration was sought. One was a corporation and two were individuals associated with the corporation. First options initiated an arbitration against the three parties. Those parties went to arbitration. In the context of that arbitration, two of the parties said, you cannot arbitrate the dispute with us because we have never signed, we have never made an arbitration agreement. That was eventually reviewed all the way up to the Supreme Court, and the Supreme Court agreed that there must be the making of an arbitration agreement. It affirmed as to the arbitration award, as to the party that had signed an agreement, as to those parties who had not signed an agreement, it reversed. I would say also that this appeal must be reviewed against a background of congressional intent and strong Supreme Court precedent establishing three fundamental policies that favor enforcement of arbitration agreements. The first and the starting point for this appeal is the strong Federal policy favoring enforcement of arbitration agreements according to their terms. The second is that any doubts concerning arbitrability are to be resolved in favor of arbitration. And I would submit that the district court here resolved doubts against arbitration. And the third is that courts may not discriminate against arbitration agreements. And as I will explain, I think in this instance, the district court made some findings and conclusions with respect to provisions of the arbitration agreement that would be unique to arbitration and would not be applicable to other agreements, and that violates Federal law. The first error we assert is that the district court erred by not referring to an arbitrator, the question whether the agreement was enforceable. Who should make this decision? This question is resolved by reference to two principal authorities. Section 4 of the Federal Arbitration Act and the Supreme Court's decision in First Options. Section 4 identifies a single threshold issue that courts must hear when presented with a motion to compel arbitration. The court shall hear challenges to, quote, the making of an agreement, end quote. That language is very specific and very important. Nowhere in Section 4 do you see a general reference to the court hearing challenges to enforceability or to validity. Those are larger sets of issues that include as a subset the making of an agreement, but there are other issues that are beyond the making of an agreement that are not included within enforceability and validity. Congress has specified only the threshold issue of the making of an agreement, a la First Options and a la Halcyon, as that to be decided by the district court. First Options recognizes that once that decision is made, other issues of validity and enforceability may be assigned to arbitration. If the court is satisfied as to the making of an agreement to arbitrate, the district court must order the parties to proceed to arbitration, and Section 4 provides, quote, in accordance with the terms of the agreement, end quote. In this case, the terms of the agreement required arbitration of all questions concerning enforceability and validity, which are distinct from whether an agreement was made in the first place. Section 4 dovetails with the Supreme Court's decision in First Options, where First Options held that questions of arbitrability may be delegated to arbitration. Again, as Your Honor pointed out, that happens when there is clear and unmistakable evidence of such delegation. There was no question on the record before this Court of such evidence. In this case, the arbitration agreement provides that the validity or enforceability of the rider shall be resolved by binding arbitration pursuant to the arbitration provision. I might point out that the district court found no procedural unconscionability. The fact of an agreement is a verity on this appeal and is not challenged. I would submit that the district court, in making its determination that it was the appropriate form to decide this issue, confused the making of an agreement with the validity of the agreement. As to the latter, the Court concluded that parties may not agree to submit the question whether an agreement is, quote, valid, end quote, to arbitration. That plainly is not what Section 4 of the Federal Arbitration Act says. It plainly is not what First Options says. This conclusion of law is reviewed de novo and is erroneous. Section 4 does not require the Court to hear questions of validity and enforceability, but specifically limits the mandatory threshold inquiry to the making of an agreement. Appellees also ignore this distinction and confuse the making of an agreement with the enforcement of the agreement. This precise distinction between enforceability and the making of an agreement was previously recognized by the Ninth Circuit in the Three Valleys case. In that case, the Court went through an extensive discussion of the Prima Paint line of authority of First Options, pointed out that the Federal Arbitration Act refers to the making of an agreement, and pointed out that enforceability is different in a contract a party has, in fact, agreed to arbitrate in the first instance. So our argument is completely in line with the precedent that this Court has established on this issue. The second error that we assert, Your Honor, is that there – that the district court did not apply the appropriate standard under Washington law for determining whether this contract is substantively unconscionable. The words that have been used by the parties and the courts include shocking to the conscience or monstrously harsh. In fact, these same terms have been applied in cases that have involved consumers. There's the Weintraub case, which involved a 20 percent increase in mortgage fees in Seattle, and there is also the Watson v. Ingram case in which an expensive earnest fee deposit was forfeited. In those cases, the Court found that those instances did not show that the results were monstrously harsh or shocking to the conscience. Now, appellees prefer the formulation that this contract is unjustly one-sided. This particular formulation provides no guidance as to how unequal the bargain must be before a court will step in and decline to enforce the provisions to which the parties have already agreed. There is Washington case law that provides additional definition that helps us understand where in this continuum from one-sidedness to monstrously harsh the In the Montgomery Ward case, the Washington Court of Appeals found that a lease agreement was a hard or oppressive bargain, but that that was not sufficient in and of itself to require an unenforceable finding as to that lease agreement. Similarly, in a more recent case, the Court of Appeals provided additional guidance in saying that an unconscionable contract is one which no man in his right Clearly, none of the four provisions at issue in this case would meet those standards. Is that the Montgomery Ward case? That's Montgomery Ward, is the first case. The second case is the Gill case, which involved a settlement agreement in which a party overpaid another party by $30,000 due to a drafting error. That was the one where the language was nobody in his right mind would accept? Yes. Those are both cited in our reply brief. There are four provisions challenged here. The first is class certification, and as to that issue, there are two events that occurred after the close of briefing that we have submitted to the court by way of a supplemental letter to the clerk of the court that was dated July 15th. We have included the district court's order denying the plaintiff's motion for class certification, and we have also included the Court of Appeals decision, the Washington Court of Appeals decision, in Heathie v. State Farm, which addresses some of these issues rather directly. Has the court received those supplemental materials? Judge Lasnik's denial of class certification eliminates the factual underpinning for the court's conclusion that the fact that one cannot have a class lawsuit at the time that one is arbitrating is unconscionable. That's not necessarily the end of the game, though. I mean, I take it that efforts may be made either to persuade the district court or subsequently on appeal to get a different result with regard to class certification. That is occurring. There is a motion for discretionary review pending. But at this point in time, the court has made that finding, so it's extremely unlikely that those efforts would be availing. Also, in the Heathie case, which I submitted with the district court's order, the Washington Court of Appeals reviewed a consumer case involving State Farm. And in that case, the Washington Court of Appeals determined that that case would not be suitable for class certification, and even without a pending motion for class certification determined in part on that ground, that the fact that the arbitration agreement precluded class litigation could not be a ground for finding it substantively unconscionable. So I think the Heathie case indicates that there need be no final decision in order to rely on a denial of certification as a basis for finding no substantive unconscionability. There are two Washington cases that have addressed this issue square on. One is Stein v. Generico. The other is Heathie v. State Farm. Both of those held that the fact that the case at issue could not proceed as a class certification did not render an arbitration agreement unenforceable. The question is, why should the decision here in the State of Washington be any different than this Court's decision in Ting v. AT&T, which was decided under Ninth Circuit law? First, Washington and California appellate courts have reached very different decisions, and this is a matter of State law. The Ting case followed Zitella v. Discover. In Washington, Zitella v. Discover has not been followed. In Washington, Stein and Heathie are the controlling precedents. The second reason is that Washington and California emphasize very different policies. California places great importance on representative actions, as is demonstrated by unique statutes such as Section 17200 and by the Arbitration Act, which provides for class arbitration, which doesn't exist in Washington. There are no comparable statutes in Washington. Third, Ting found substantial problems of procedural unconscionability that are not present here. And under California law, those procedural unconscionability issues will adjust the degree of offensiveness that must be applied to find substantive unconscionability. Let me turn to the prohibitive costs aspect of the Court's ruling. Here, I believe the Court did not apply the correct standard again. The district court compared the fees and expenses of arbitration to the filing fee that one would incur in the district court and said that the fees and costs in arbitration were ten times greater than the filing fee in district court. That is not the appropriate comparison. Mindful of the fact that you probably want to save a couple minutes for rebuttal, let me jump you ahead to the last question. Okay. Assume for purposes of this discussion that we accept the conclusion reached by the district court with regard to the individual elements of unconscionability. Do I understand your position correct to say that you're prepared to, in effect, strip those out of the agreement and still proceed with arbitration? That is, the severability clause is one that you wish to apply here, still proceed with arbitration even without the individual supposedly offending elements taken out. Yes, absolutely, Your Honor. And let me make a distinction between this case and the case of Circuit City v. Mantort, where the Court refused to sever those provisions. In the Mantor arbitration agreement, that contract also required or included limitations on damages remedies or limitations on the availability of remedies and limitations on the claims that could be brought. So it affected the actual scope of arbitration. There, the Court refused to be the author of the agreement. There is no such problem with this agreement because it has no such limitations. So, for example, merely excising the confidentiality provision does not affect the scope of what the parties have agreed to, nor do any of these other provisions. And, in fact, we have waived our rights to have the borrowers be responsible for any portion of the costs in arbitration already. So that is waived. We would be stopped from proceeding otherwise. The jams fee schedule for that, as the record is clear, and I think this is undisputed, would provide that the consumers would have to pay nothing more than $125. If, for some reason, that turned out not to be the case, the remedy would be for the consumers to return to the district court, say, we've been hoodwinked, things are not as represented, we're paying more than we should be paying, lift the stay of the litigation and let us go forward in the litigation. So I think that's the appropriate procedure that should be in place. Alito. Roberts. And I'll give you another minute to make up for this. Let me ask specifically with regard to the class certification element. Suppose we would say the limitation on class treatment in arbitration is taken out so that the arbitrator or arbitrators, if there's a panel, could elect to proceed with this as a class action. Now, procedurally, exactly how that would go, I'm not sure. But let's assume for the moment they did. Is that something you're still willing to proceed with in arbitration? That is, let the arbitrators resolve a class certification issue? No, Your Honor. And the reason is that issue is specifically addressed in Stein v. Generco. First, it said if you can't have class action litigation, that doesn't render the agreement substantively unconscionable. Second, it said we can't compel you to have class-wide arbitration if you didn't agree to it. And that is one of the principal policies that Washington courts look at when they are looking at enforcement of arbitration agreements. At least that one element is not one that you're looking to waive or sever. I would say, Your Honor, that plaintiffs here have never at any time in these proceedings asked to engage in class-wide arbitration. They have asked for class-wide litigation. So that issue is not before the Court. I reserve the balance of my time. Will I have a minute and 48 seconds, Your Honor? Thank you. May it please the Court. Good morning, Your Honors. My name is Richard Jerebeck. I appear this morning on behalf of the appellees, Joseph and Jeannie Luna, Carl and Brenda Bennett, Neil and Elsie Nelson, Daniel and Maisie James, Brian and Jeanette Thompson. All appellees are borrowers of Defendants Household Finance Corporation III and beneficial mortgage. I'll start with the validity issue. And when I was preparing for this, I was going to address the legal issues concerning first options first and then talk a little bit about the facts. I think I'm going to do it in the opposite direction for an important reason. Back in 2002, we filed our lawsuit in state court. On April 30th, Household sent to the borrowers a letter. And at that time, they sent it to the Lunas, Bennetts, and Nelsons. The Jameses and Thompsons were added later. And this letter is very telling in my mind as to what Household really believes the law is. The letter is contained in the record at pages 82, 85, and 88. It's a copy of the same letter to each set of plaintiffs. And what Household says in this letter is this. Unless within 20 days after service of this letter, you shall serve a motion to stay arbitration. You shall thereafter be barred from putting in issue the existence of the validity of the agreement. I think that's a very important point to consider here. If they don't bring the matter to court, they will be barred from putting in issue the existence of the validity. There's no place else to serve such a motion except for the federal court, or in this case, we were in federal court at that time in the Eastern District of Washington. There's no arbitrator. Because it's Household that's electing the arbitration, they would choose the arbitrator. But the important point is this. We know, and we're talking about a validity issue, the gateway issue, as to whether this agreement was ever formed in the first instance. I mean, was the agreement ever made? We know that when you're talking about unconscionability, that we're looking at the point in time when the contract is hypothetically entered into. Borrowers in this case, it would be darned if you do and darned if you don't. When we're talking about first options, the way I read Household's argument is this. I think they're asking for the court to extend first options. And first options is a case that presumes the underlying validity, but questions whether a particular dispute comes within the scope of an agreed valid arbitration agreement. And they're trying to extend that to these validity questions. And what Judge Lasnik said about that is that you cannot do that. The judge is always the gatekeeper on whether there are grounds of law or equity to not enforce an agreement under Section 2 of the FAA. I'd point out that the Supreme Court and the Ninth Circuit have both considered validity questions despite similar or exact language contained in arbitration writers. Let's start with the Tickner case. Tickner v. Choice Hotels, 265F3rd, 931 at pages 936, 9037. The Ninth Circuit specifically articulates the arbitration writer in that case. And the underlying writer says any controversy or claim relating to this agreement, including any claim that this agreement or any part of this agreement is invalid, illegal, or otherwise void or voidable, will be sent to arbitration. And the Court has no problem reaching the validity challenge in that case. In fact, in the Supreme Court in Greentree v. Randolph, 531 U.S., 79 at page 83, footnote 1, the Court expressly puts in the opinion the arbitration writer provision that states that all disputes, claims, or controversies relating to the validity of the arbitration clause will be resolved by the arbitrator. Again, the Supreme Court has no problem hearing the challenge under Section 2 of the FAA. Was the challenge the challenge of the same nature as offered up here? I mean, the puzzle is drawn as a distinction between making and validity. There's not much question there was an agreement made here. There's some question as to whether the agreement is valid. What's the nature of the challenge made in Tickner or in Greentree? Is it similar? Unconstability. And that's an interesting point when you just single out one word in the scope of the FAA and not read it in connection with Section 2 and Section 4 together. You just say making. What does making mean? What the court, district court, Judge Lasnik said is when you're talking about unconscionability, you're talking about the circumstances at the formation of the agreement. And if there's unconscionability, the agreement was never made. I.e., it was signed. But what the court in Acorn citing Circuit City said is there's no dispute that there's a signature on the agreement. The question is whether there are reasons at law or in equity to not enforce that agreement. We would submit that if the judge sent the arbitration, ordered the parties to arbitration, that in effect he would be enforcing an agreement. And so then you're in Pandora's box. Is he enforcing an invalid agreement? Who decides? The clear rule, the only rule that makes sense in this case is for the judge to decide a gateway issue. I take it as chicken and egg. And it's hard to figure out where to come in. I worked hard on this one. And I see the language in the Supreme Court's decisions that indicate that there can be a case where it's clearly an unmistakable, but I haven't found anybody that tells me what clearly an unmistakable means. That's right. At this point, I'll move on unless there are any other questions on the validity issue that you'd like me to address. Let's talk about the substantive unconscionability standard. A little bit of procedural history. At the trial court level, Household argued that under Washington law, you needed to prove both procedural and substantive unconscionability in order to render an agreement unenforceable. That was the argument they made. The court rejected that argument, and I don't see a challenge to that point here. So I'm going to proceed with the understanding that Household believes that now you only need to prove one or the other, which is the correct Washington standard. Now what they try to do is distinguish this California articulation of the standard from the Washington articulation. And as Household points out in their brief, what district courts are bound to do is follow the decisions of the high court of the state. Now, there are two decisions of the high court of the state of Washington that specifically articulate the substantive unconscionability standard in Washington. One is a 1995 case, and one is a 1999 case. And what those cases say is this. And I'm quoting from Nelson v. McGoldrick, 127, Washington 2nd, 124, page 131. Substantive unconscionability involves those cases where a clause or term in a contract that is alleged to be one-sided or overly harsh, shocking to the conscience, monstrously harsh, or exceedingly callous, are terms sometimes used to define substantive unconscionability. Now, in my short career as a lawyer, I've read, I think, every substantive unconscionability case in Washington. And what I find is this. And I'm going to quote from a 1975 Supreme Court case out of Washington, the Schroeder v. Fagel-Motors case. It is extremely difficult to articulate an operational definition of substantive unconscionability. And so as you read the cases over time, you'll find that a lot of courts are articulating different ways to express an idea. And what is that idea? That idea is when you make it too one-sided, so one-sided that it's not fair, there's a doctrine of law that won't enforce those agreements. What we have here is two learned district court judges. The district court judge in this case, and there's a companion case in California, who have both thoroughly reviewed the factual records. They have both thoroughly reviewed the arbitration writer. They have both heard oral argument, and they have both come to the conclusion that this writer is substantively unconscionable. It is so one-hearted, one-sided, there are so many terms that tip the scales, put the thumb on the scale of household, just enough to make it difficult for these folks to effectively vindicate their legal rights. And I would submit to the Court that when you really investigate the cases, there's no true distinction between the California standard and the Washington standard. In fact, the Court expressly noted in his opinion that the cases that have attempted to articulate the substantive unconscionability standard in California have done so in quite the same way that the Washington cases have. And the Court specifically noted the Lozado v. AT&T Wireless case, the 216 F. Subsecond 1071 Central District of California case. There's no real distinction in the way the courts articulate the standard. And so what we are left with is another analysis, which is now that California does this balancing test, and so they need to show both procedural and substantive unconscionability. And so does that balancing test somehow come into play here, somehow affect the Court's rationale? We would submit to the Court that it does not, because if you look at the Acorn case, Acorn v. Household International, Judge Wilkin, what the Court found there was that the contract was procedurally unconscionable, but only because it was an adhesion contract, only because of the form of the agreement was adhesive. It was a consumer contract, take it or leave it, printed form, drafted by household. The Court says we have found minimal procedural unconscionability, the bare bones, low threshold of procedural unconscionability. And what that means is, if you're talking about the sliding scale, that now we've got to find a heavily substantively unconscionable standard in order to render the agreement unenforceable. So what you have is an articulation out of California that says this agreement is highly substantive. Substantively unconscionable. Judge Lasnik agreed. Well, it does suggest, though, at least a little bit of distinction between California and Washington, because the district court here made the point of saying the fact that it was an adhesion contract by itself is not enough under Washington law to establish procedural unconscionability. Absolutely. So maybe in the grand scheme of things, in terms of adding the pieces up, there's not a big difference. But at least the route to get there seems to be a little bit different. The methodology is different. I'm going to move now to the individual elements of the contract that the judge considered. But first I want to talk a little bit what the Court's folding really was, because you can get overly analytical about a contract that's done monstrously harsh with no reasonable person except this particular class. But what the judge said was this. The arbitration writer's provisions regarding the class actions, legal remedies provision and confidentiality provision and fee-sharing provisions constitute a one-sided contract that, taken together as a whole, grossly favor household. So I think the key language there is taken together. Household is trying to just tweak the system a little bit in all of these different areas to effectively make it difficult for these folks to vindicate their legal rights. The first point I want to talk about under the class action provision is the Court's recent denial of class certification and what that means as far as the analysis of an unconscionability defense. What the Washington courts say about unconscionability is this. And I'm quoting two cases that are not in our brief, but in response to the letter Household submitted on July 15th, 2003. That's the Rojic v. Dressel case, 45, Washington 2nd, 829 at page 843, and Jeffrey v. Weintraub at 32 Washout 536. Washington courts do you... Washington courts evaluate unconscionability as of the time of the agreement. Both of those cases state the same thing. You evaluate an unconscionability defense at the time of the agreement. Cases that Household argues to the Court today are not unconscionability cases. What we're talking about is whether when these folks entered this agreement, whether Household was tweaking the system. And I can express this point by talking about the Stein v. Generico case. What the Court said in Stein is this, and this is important. There may be due process and policy grounds for permitting class arbitration. Because Stein has not argued these grounds, we do not address them. On this question, we're not going to decide the issue because there's a failure of proof. But what Stein says is there's a possibility you can get it. There's a possibility you can't get it. We don't decide it. So at the time of this agreement, what Household says is, well, this is an uncertain area of law, so why don't we just foreclose it? Why don't we just tip the scales a little bit in our favor by deciding the issue for these folks? Let's just put it in the arbitration rider. Again, Stein is hardly a pronouncement from the state's high court and, in fact, leaves the question open. I've read the Heapney case, and all I see is a statement of Stein. I don't see anything that affects the analysis there. But I really want to take a moment and just talk about the Stein argument, because procedural history here, we actually hold this as the third time we are arguing in this case, these particular issues to a court. In July of 2002, we argued this exact issue to the Honorable Judge Whaley out of the Eastern District of Washington. Four months later, in October, we argued the exact issue to Judge Lasnik in the Western District. Through that process, as the judge noted in the opinion, there was a voluminous record, because we had been battling this out for months and months and months. But if you look at Households Briefs, they submitted four of them. I totaled up about 67, 68 pages of briefing. One brief alone contained 41 case citations. I looked. I read every page of those recently, and I couldn't find one citation to Stein. I couldn't find an argument made to the Court on Stein. And all I'm saying here is this. Don't sandbag us. Let the judge decide. If you have real issues, if you really have a killer case, bring it to the Court's attention. This is a 2001 case. This is not a new case. And we would say, as a general rule, Ninth Circuit courts will not consider an issue raised for the first time on appeal. That's the Bolker case, 760 F. 2nd, 1039-1042, 1985. Point is this. We think they're raising the issue for the first time on appeal, and we ask the Court not consider it. Even if the Court considers it, there is no pronouncement from the state's high court on the issue. Stein recognized that it was an open question. Okay. I won't belabor that point anymore. Interestingly, on the class action provision, the Court in Ting, the Ninth Circuit Court, cited this case with positive authority, recognizing that the exact question, whether an express class action provision adds to unconscionability, was a first impression question in Washington. Ting supports our case, cites it with positive authority. We believe that it's the correct ruling. See, my time's getting low. I'm going to talk about cost, because I think this is a very, very important area of the law. As the Court in Circuit City noticed, and they stated in the side note, in their opinion, at 1151, 279F3rd, excuse me, at 894 footnote 5. As a side note, whereas the arbitration agreement in Greentree were silent as to the allocation of fees, the DRA explicitly divides the cost of arbitration. It's an emerging area of the law, but an interesting area, and I think, based on my review of the cases, that they come down in two areas. One is where the agreements are silent on cost, and one where there's expressed provisions. I think what the district court did with the cost analysis is consider Clamp's argument that the cost would be prohibitively expensive, and he found that we had made the threshold showing under Mendez that the costs were prohibitively expensive. He then analyzes household evidence and finds that that evidence is not sufficient to rebut. Plaintiff's evidence. Ultimately, what he does, though, is states, we're talking about the express cost provision cases, and applies the rule that when you can't, in an arbitration clause, impose substantially higher costs on borrowers than they would be forced to pay in court. You're just tipping the scale, putting the thumb on the scale. With regard to the confidentiality contained in the rider, the clear authority is that when you've got the repeat player case with the confidentiality provision, taking those two together favors an unconstitutability finding. That's Colby-Burns, 105 F. 3rd, 1465, 1476, District Court, 1997. Acorn, 211 F. 2nd at 1172. Ting, 182 F. 2nd at 193, 931 through 933. I'm running out of time here. Let me ask you to get to the last issue, the severability issue. Suppose the offending provisions are stripped out. What's wrong with arbitration at that point? There's two things wrong with it. First, the arbitration provision prohibits joinder of claims. And when this case started, three families from Bellingham joined together, three families who took out a loan from the same loan officer. Three families would be required to put on the same proof to prove their case. And the reason they joined together is obvious. To save time, to save resources, to save lawyer fees. We're talking about the economics of litigation and arbitration. Household is not seeking arbitration. This is the big myth. Household is not seeking arbitration to save costs. No, they want to actually force people to battle it out one-on-one, actually prolong the experience. It's going to be a lot more costly to arbitrate individually. And those are not the policies that Washington courts, and Mendez particularly says the policies favoring arbitration is to save time and money. What we're not trying to do here is save time and money. We're trying to make it take longer, have to call the same witness, three different arbitrations, argue the same issues three different times. Maybe in one of those or two of those we'll win, maybe one of them we'll lose. But that's the point. The second point is severability. There's a specific rule in the unconscionability context regarding severability. The foundation of that rule is Section 208 of the Restatement of Contracts. The California courts have codified that rule. It's the same rule. And the rule is, if the court as a matter of law finds a contract or any clause of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract. The court in the unconscionability context has the discretion not to enforce the agreement. And what we see in the case law is an evolution of when courts will sever, and when courts will not enforce, despite the severability clause. And I'll cite a few cases here, Graham Oil v. Arco Products, 43F 3rd, 1244, 1249, 9th Circuit, 1995. Torrance v. Adams, Funding Corp, 242F 2nd, 962. Acorn v. Household International, 211F 2nd at 1174. And what the court says is this. If we have to rewrite the agreement, in other words, completely change what the drafter had in mind to the point where all these terms taint the agreement, it's so tainted that it can't be severed, then we are going to not sever. We are going to not enforce the agreement. Your Honor, I see that I'm out of time. Thank you very much for your time. Is there any particular question that the panel would like me to address? If nobody else says something, let me jump you to the last question and the severability again. When I took up all your time the last time, the issue of class certification had been raised, and you indicated that Stein, you thought, would still preclude an arbitration panel from proceeding with class treatment. But my understanding was that that's based on the premise that a party hadn't agreed to class treatment and arbitration. So let me put the question back again. I mean, suppose that turns out to be the problem. Is Household Finance prepared to deal with arbitration in a class context? I haven't consulted with my counsel or my client about that question, frankly, Your Honor. And part of the reason is it has never been put to any court. This case started in a state court, went to the Eastern District, wound up in the Western District, and at no point in those proceedings has the plaintiffs ever suggested that they are interested in class arbitration. So I can't answer that. I would suggest that class arbitration presents a host of thorny problems, including how do you bind absent class members without the notice provisions of Rule 23 that have no resolution or answer to them and are not governed by Washington law as they are by California law. And as you say, I'd anticipated that because I've tried to feel for the bottom. I'm not sure where the bottom is there. I don't know how the class arbitration would work. And recognizing the Stein case, I still recognize that's one difference and one arguable basis for saying, look, if otherwise the parties could proceed on a class basis and they can't because of this clause, isn't that one of the things that's a problem with the clause? That is an issue of state law. Under California law, it clearly is. Under Washington law, there are two appellate decisions that say that it's not. There is no other authority that suggests that it is. The procedures – I'm sorry. The policies in Washington are different than they are in California. We don't have 17-200. We don't have a Washington Arbitration Act that includes a provision for class-wide arbitration. And the policies stated in Stein about enforcing agreements according to how they're written prevail over those different policies in California and make the decision here, I think, clearly distinct. Let me just respond to a couple of points. The first is that the language referred to by counsel in the letters to all of the plaintiffs were mandated by the Washington Arbitration Act. That's mandatory language. And I see that my time is about up, so if there's nothing else. Thank you. Thank you. The case is submitted. And that concludes today's calendar. So we are adjourned. All rise.
judges: Browning, Alarcon, Clifton